Stores, C. J.
The first question made in this case respects the power of the plaintiffs to make the contract out of which the note of the defendant, on which the plaintiffs claim to recover, arose. The plaintiffs first claim to have derived such power from the express terms of their charter; and rely on the provisions of the 8th, 18th and 17th sections, which provide that the plaintiffs’ company, for the better security of its dealers, may receive, during the first two years, after the passage of their charter, notes or other securities, for. premiums in advance of persons intending to receive its policies, and may negotiate the same for the purpose only of paying claims against it in the course of its dealings, upon such terms and conditions as may be provided for by the by-laws of said corporation, and that persons giving such notes or securities may be allowed therefor a sum not exceeding six per cent., in addition to any other profits they may be entitled to as members of the company ; and prescribes how and to what extent the trustees of the company shall assess the makers of such notes or obligations upon them, when the funds of said corporation on hand should be insufficient to pay the claims on the company for losses on policies.
On the facts stated in this case, and especially from the tenor of the votes and proceedings of the plaintiffs, in pursuance of which the agreement was entered into between the company on the one part, and the defendant and those united with him for the purpose of furnishing the guarantee fund on the other, of which' the note now in question was to be a part, and the nature of the arrangement and the subsequent conduct of the parties under it, there is no doubt that the parties supposed that it was strictly sanctioned by and conformable to the 8th section of the charter. But notwithstanding- this, it is at least very question *51 able whether that arrangement was, in its character and object, one which -was contemplated by that section, or to *which its language is applicable, and whether conse- [ *62 J quently it was expressly sanctioned by it. The only obligations which, by its tenor, the company are authorized to receive and negotiate for the purpose mentioned in it, are those which it may receive for premiums in advance, of persons intending to receive its policies. And the language of those sections, the first of which provides that those persons shall be entitled to their proportion of the profits of the business of the company, and the second of which provides that they may receive such allowance for giving their obligations for premiums in addition to any other profits they may be entitled to as members of the company, would seem conclusively to show that it is only to the obligations of such persons that those provisions were intended to be applicable, since such persons only can be members of the company and entitled to the profits of its business. But in regard to the' agreement between the company and the defendant and others, to effectuate which the note now in question and the notes of the other subscribers to that agreement were given, it does not appear that the parties contemplated the taking of those notes of the makers for any premiums, in advance or otherwise, on policies of insurance to be received by them of the company, although those makers might in fact be or become members of it; but the facts before us would rather show that those notes were designed to be given in order to constitute a fund, distinct fx’om and independent of that which might be cx’eated by the obligations received by the company for premiums on policies issued by them in pux’suing their ox’dinaxy and appropi’iate business, and wei*e intended and pi'ovided as a fund in aid of the fund to be x-eceived by the company from such premiums.
The notes of the defendant and others, given under the arrangement of April 19, 1847, were to create a special “guaranty fund ” in addition to the ordinary funds of the company received in the coui’se of its business, and as an inducement to persons to take out policies from the company, *and a [ *63 ] security to them for the amount which might become due on those policies in case the ox’dinary funds of the company should prove insufficient for that purpose—a fund which it was deemed indispensable to cx'eatein order to inspire sufficient confidence in those who desired to receive policies from the company, and none of which policies were, by the terms of the resolution under which the fund was created, to be issued until that special fund should be created. And it appears that, after the passing of the original resolution px’oviding for the creation of that fund, *52 and before the amount prescribed in it to be raised was obtained, and while the business of the company was at a stand for the want of the contemplated guaranty fund, in consequence of the applications of many persons to obtain immediate insurance from the company, but who were unwilling to receive policies until that fund should be raised, that resolution was so modified that the amount of which that fund should consist should be reduced, and that, in conformity with such modification, the note in question, with the others given at the same time, was executed under the agreement of the 19th of April, 1847. That it was not the intention of the plaintiffs or the other parties to that agreement that any of the notes to he given in pursuance of it were to be applied, when given, towards premiums for insurance, either in advance or otherwise, is clear from the terms of the agreement. The stipulation on that subject is merely that the subscribers to it might, at their option, in lieu of the return of their notes therein provided for, absorb their amount in premiums on policies upon their own lives or lives of others procured by their agency; and it does not appear that any such policies were ever taken out.
But, without determining whgjher the charter of the plaintiffs expressly authorized the contract on which the note in question was given, we have no doubt that, without resorting to that source, the arrangement on which it was executed, and consequently the note itself, was valid as the exercise of a power which. was implied, and therefore incidental to tlie powers expressly conferred by the charter. While a corporation has [ *64 j *no powers except those which are conferred by its charter, it is not requisite that those powers should be expressly granted, but it possesses impliedly and incidentally all such powers as are necessary for the purpose of carrying into effect those which are expressly granted. The creation of a corporation for a specified purpose implies a power to use the means necessary to effect that purpose ; and in respect to contracts, a corporation has power to make all such as are necessary in the course of the business which it is authorized to carry on, and which are not forbidden expressly or impliedly by its charter, as means to enable it to accomplish the object for which it was created. Ang. & A., on Corp., §§ ill, 256, et seq. We are clearly of the opinion that a just application of these familiar principles fully warranted the arrangement between the plaintiffs and the defendant and others, in pursuance of which the note now in question was given. The plaintiffs were incorporated, as a Mutual Life Insurance Company, with the usual powers incident to that business. No capital stock was required or expected to be originally created, as a basis upon which such *53 business was to be commenced or conducted. Its ordinary means of meeting its liabilities on its policies consisted only of its receipts of premiums on them.. It is very apparent that when it commenced its business, and for at least a considerable time thereafter, those receipts might be insufficient to enable it to meet its liabilities upon its policies, and that therefore the successful prosecution of its business might require a better security for the indemnity of those who should take out policies than would be furnished by those receipts; and there would be no more obvious, convenient or proper mode of furnishing such security, than to provide a guaranty fund to pay losses accruing upon policies, by procuring responsible persons, for a reasonable compensation, to contribute, if the other funds of the company should be exhausted for that purpose, until the profits of the company should enable it to dispense with such extraordinary aid. Such an arrangement would, in our opinion, constitute the necessary, or, in words which perhaps express more precisely *the sense in which that term is understood £ *65 ] in relation to this subject, fit and appropriate means for carrying on the business for which the company was incorporated. It can not with any propriety be said, that it would be the pursuit of a new kind of business, or one for the prosecution of which the plaintiffs were not incorporated. It is obvious that it would not be entered into as of itself, and unconnected with the business for which they were chartered, a source of any profit or benefit to them. From its very nature it could not be. It was an arrangement which was made, not as an end, but only as a means or instrument for the successful prosecution of their main and appropriate business. And the facts before us conclusively show that such, in the present instance, was the only design or motive with which it was entered into, and that it was resorted to by the plaintiffs as a matter necessary to the prosecution of their proper business, and was shown by experience to be such. We can not therefore pronounce that arrangement to be an illegitimate exercise of the powers conferred by their charter. Indeed, if we were to declare it in-. valid on this ground, we do not see why the broad ground must not be taken that, in the case of any corporation created for the purpose of carrying on a particular kind of business requiring credit in its prosecution, it would be an excess of its power to engage or secure in support or aid of its own eredit, that of other persons in regard to the fulfillment of its contracts, even when the exigencies of its business required such aid for its prosecution; and the principle would even go so far as to prohibit the ordinary engagement of suretyship in behalf of *54 such corporation. Nothing is more common than the exercise of such a power by our pecuniary corporations, and the power is one from the exercise of whiclrnot only no evil, but the greatest benefit to such corporations and to the public, has arisen. And it was never before suggested that it was beyond the scope of the powers granted to such bodies. Supposing'that the arrangement -which wé are now considering was not embraced by the provision of the 8th section of the plaintiffs’ charter, to which we have alluded, those allowed by that section, for the [ *66 ] ^security of their dealers, and which were undoubtedly supposed, although erroneously, to be sufficient to enable the plaintiffs to commence and prosecute their business successfully, sanctioned an arrangement of the same character as that now before us, and was only restricted to those particular persons who might obtain insurance from the plaintiffs. And we are unable to perceive any reason why, if the welfare of the plaintiffs and the safety of their dealers required it, a similar arrangement'should not be sanctioned with any other persons who might be induced to lend their credit to the plaintiffs. The note in ' question therefore is, notwithstanding this objection, valid.
It is next objected that the note in question is wffthout consideration. The first ground on which this objection is urged, that the agreement on which it was given is unauthorized by the chartér, has been already answered. ' The other, that the note was gratuitous on the part of the defendant is equally untenable. This note, with those of other persons, was given in pursuance of and to carry out the agreement of the 19th of April, 1847. If therefore that was an obligatory agreement the notes were equally so. A consideration which would attach to the one, in the absence of the stipulation that the notes should be given as a security for’ its performance, would plainly attach to the notes if such a stipulation were inserted. Looking then to that agreement, and viewing it according to the most simple, familar and narrow principles which apply to the subject, the promise by the plaintiffs to pay the defendant the compensation agreed on for the furnishing a proportion of the guaranty fund which it was the object to create,: clearly consituted a sufficient consideration for the promise of the defendant.- No reasoning is necessary to show that -such latter promise is not gratuitous. A violation of it would therefore be actionable. It is unnecessary on this point to inquire what would- be the amount which the plaintiffs would recover in an action on an ■ unfulfilled promise,'made in consideration of a compensation paid to the promissor, to pay the former a certain sum-of-money, in which *55 the element should he wanting, that other persons had such an interest in the amount to be so paid, that that circumstance would *furnish no guide as to the amount of [ *67 ] the recovery. That would be a question quite distinct from tbe inquiry whether the promise would be wholly invalid for want of consideration, although in such a case the amount of the consideration might, on the question of damages, enter into the amount of the recovery. But the case just supposed bears no resemblance to the present. And the difference in their circumstances is so great that, not merely in respect to the amount of the recovery, but as to the question now before us, of the existence of a valid consideration for the defendant’s promise, we wrould place our decision on broader and higher grounds than the mere promise of the plaintiffs to compensate the defendant for contributing to the fund which the former was about to create. Although from the premiums to be received from those persons w'ho should obtain insurance from the plaintiffs the latter would consequentially derive a benefit, the direct and express object of raising that fund was to induce those persons to obtain such insurance by providing for them a fund independent of the ordinary resources of the company, upon which in cases of loss they could safely rely for their indemnity. Unless that fund had been provided they would not have taken policies from the company, and it was upon it that they principally relied. And it was expressly understood between them and the company, that the fund was to be created and held by the latter for the exclusive benefit of such policy-holders. By receiving those policies they would become members of the company, and as such they would themselves bear their proportion of the allowance to be paid to the defendant and the others furnishing that fund. And it was one of the terms of the agreement between them and the company, that the notes given under it, and which should constitute the fund, should be “ held by the said company for the sole purpose of paying losses wrhich should accrue on the policies issued by the said company, and should not be used until the other funds in the hands of the company should have been first applied for that purpose.” Under these circumstances, that agreement should be deemed to have been made, and the notes given in pursuance of it to be held by the company, *in trust for the benefit of those persons who re- [ *68 ] ceived policies from the company ; and we think that the procuring of insurance from the company on the strength of them, by those for whose benefit this suit is prosecuted, constitutes a perfect legal consideration for those notes. There is therefore, no more objection to a recovery by the company on *56 those notes, than there would be if the agreement had been made with those holders of policies, and the notes had been given to them directly ; and we can not doubt that a court of equity would, if necessary, compel the company to enforce those notes for the benefit of those holders, and would restrain it from diverting them to any other purpose than those for which they were thus given. Otherwise, the making of that agreement and the giving of those notes, instead of furnishing a fund for the security of those policy holders, might he the means of practising the grossest fraud upon them. On these grounds the objection of a want of consideration is groundless.
The claim of the defendant that the note in question is barred by the statute of limitations is not well founded. By its terms, an action on it could not be sustained until an assessment had been made upon it, according to the provisions of the agreement in pursuance of which it was made. And that assessment in this case, of the regularity of which no question has been raised, was made at too recent a period to admit of the claim being barred by that statute.
The result is, that the plaintiffs are entitled to judgment for the amount of the installment required by the trustees of the plaintiffs on the note in question, with interest thereon from the time of the demand by the receiver, without the deduction? claimed by the defendant, of the allowance which, by the agreement, was to be made by the plaintiffs to him for the loan of said note, as such deduction would be contrary to the terms and manifest intent of that agreement. And the superior court should he advised accordingly.
In this opinion the other judges concurred ; except Butler, J., who was absent.
Judgment for plaintiffs advised.