The Hope Mutual Life Insurance Company, Respondent, *v.* Dennis Perkins, Appellant.

Corporations, general powers of.  Corporations, in the absence of restrictions imposed by statute, have the power necessary to enable them to transact the business authorized by their charter.  They may borrow money for the purposes of their business, and for the like purpose may procure sureties whose contracts of indemnity are valid, the same as if made with individuals.

The plaintiff as a corporation incorporated by the legislature of Connecticut had authority to take guaranty notes, for the security of policy holders; and such notes when given for such purpose are valid and binding contracts for the purposes specified. Same in case of *Hope Mutual Insurance Co.* v. *Taylor et al.*

This case comes here upon an appeal from a judgment of the General Term of the Supreme Court of the city of New York, rendered against the defendant, affirming the judgment of the Special Term.

The action was brought upon a subscription note of the defendant, of which the following is a copy:

"$2,500.    New York, May 1, 1847.

"Twelve months after date, or sooner if required, I promise to pay to the Hope Mutual Life Insurance Company of Stamford, Connecticut, or order, two thousand five hundred dollars, or such assessment thereon as the trustees find it necessary to impose for the purpose of paying losses, agreeable to the terms of my subscription to the guarantee fund of said company, dated April 19, 1847, for value received.

"(Signed)    DENNIS PERKINS."

The foregoing subscription note was executed by the defendant in pursuance of a subscription made by him on the 19th day of April, 1847, upon the following terms:

"Whereas it has been deemed advisable by the Hope Mutual Life Insurance Company of Stamford, Connecticut, to create a fund for the indemnity of persons insured by said company, as a security in addition to expected profits, the

subscribers hereto have agreed with the said company to contribute to the said fund, the amount respectively set opposite their names, by giving their promissory notes, payable in one year, upon the conditions, that the same shall be held by the said company for the sole purpose of paying losses which shall accrue upon the policies assured by the said company, and shall not be used until the other funds in the hands of said company shall have been first applied; that for any deficiency after the application of the said funds on account of such losses, the said notes shall be subject to assessment for the amount required. That said indemnity fund shall, in no event, be liable for the expenses of the said company or claims against them, other than those arising upon policies issued by them, and in the latter case only after all other funds of said company have been exhausted. That for the loan of said notes the subscribers shall be entitled to an allowance at the rate of six per cent per annum, so long as the company shall hold the said security. That whenever a surplus of capital shall have been acquired by the company out of the profits of business to the amount of twenty-five thousand dollars, the indemnity herein provided shall cease and the notes or other securities shall be returned to the subscribers respectively; it being, however, understood that the subscribers hereto may, in lieu of having such return, absorb the amount of their notes in premiums of policies on their own lives or lives of others, procured through their agency. To which terms and conditions the said company assent and agree to hold the said security in conformity thereto."

This and divers other like subscription notes, were executed and delivered to the company as an indemnity fund; and they were received and accepted as such by the trustees of the company, of which the defendant was one. These notes were held until May, 1854. At a legal meeting of the board of trustees, it was resolved as follows:

" Whereas, the indebtedness of this company, from losses by death and interest accrued on the same, exceeds the sum of fifteen thousand dollars, and whereas the cash of the company is entirely exhausted; therefore,

"Resolved, That an assessment of seventy-five cents on the dollar be and hereby is levied upon the guarantee notes of the company, to raise a sum sufficient to pay said losses and interest payable on demand."

In accordance with the above resolution, the defendant was assessed on his note the sum of $1875, which he refused to pay, and suit was brought to recover the same.

The defendant set up several defenses, among which were the following:

The defendant denied, that, by the law of the State of Connecticut, the company were authorized to raise a guarantee fund in notes or other securities, for the better security of those dealing with the company. He also denied that the guarantee fund was raised under the law of the State of Connecticut; and insisted that whatever had been done in the premises, had validity only as a mere private arrangement between the parties contributing their notes and the said company.

*Truman Smith,* for the respondent.

*F. E. & A. H. Dana,* for the appellant.

Grover, J. It is insisted by the counsel for the appellant that the plaintiff had no power to receive the note in suit for the purpose of creating a fund to secure the payment of losses incurred upon policies issued by the company, and that the note is therefore void. The respondent cannot insist that this power is conferred by section eighth of the charter. This section authorizes the company to receive notes of parties for premiums on policies thereafter to be issued, and makes notes thus received available in the hands of the company for payment of its liabilities, although the policies have never been issued and no premiums been allowed thereon. This provision was necessary to prevent such notes being held without consideration. But the note in suit is not one of this class. It was not given as an advance payment of premiums upon policies thereafter to be issued. It is not,

therefore, within the provisions of the eighth section of the charter, and must be held void unless it can otherwise be upheld. The note in suit was, with others, given by the makers and received by the company for the purpose of creating a guaranty fund to policy holders for the prompt payment of losses in the absence of other means of the company for that purpose, and thus giving the company credit with the public. The question is, whether this is within the general powers of the corporation. The counsel for the appellant refers to the Revised Statutes (vol. 2, p. 600, §§ 1, 3), for the purpose of showing that it is not. The plaintiff was not incorporated by the laws of this State, but by an act of the legislature of Connecticut. It is to the laws of the latter State to which we must look to determine whether there was any restriction of the general powers of corporations imposed upon the plaintiff, no such restriction is claimed. It is conceded that corporations, in the absence of restrictions imposed by statute, have the power necessary to enable them to transact the business authorized by their charter. The plaintiff, by its charter, was authorized to conduct the business of life insurance. It possessed little or no available capital. It became necessary for it to acquire credit with the public. The most feasible way of doing this was to procure persons of respectability to guaranty the performance of its contracts. This corporations may do whenever necessary. They may borrow money for the purposes of their business, and for the like purposes procure sureties, and the contracts of the latter are valid, the same as if made with individuals. The effect of the arrangement made by the plaintiff with the maker of of the note in suit, and other makers of like notes, was to make the latter sureties of the company to the policy holders for the payment of losses. This was within the general powers of the plaintiff. This precise question came before the Supreme Court of Connecticut in a case submitted by the present plaintiff and Weed (28 Conn. 51), and the power of the corporation to take the note was sustained. I think the reasoning of the court in that case unanswerable. It is unnecessary to determine whether the Revised Statutes pro-

hibit such a corporation from exercising similar power, and I shall not discuss that point. It is further insisted by the counsel for the appellant, that the act of 1849, of this State, prohibiting foreign corporations like the plaintiff from doing business in this State, discharged the makers of notes like the one in suit from further liability thereon. I cannot concurr in this position. The makers became sureties to policy holders in effect whenever and wherever policies were lawfully issued. Conceding that the act made it unlawful for the plaintiff to transact business in this State until it had acquired a capital of one hundred thousand dollars, as required by the act, yet this could not affect the liability of the makers upon policies lawfully issued elsewhere. Whether any policies were issued in this State in contravention of the statute does not appear. If there were, such policies were void, and the makers of the notes incurred no liability thereon.

It is further insisted that the notes were without consideration. By the contract the plaintiff was to pay each maker respectively, six per cent per annum upon the amount of his note while retained by the company. This was a sufficient consideration for their becoming surety.

Again, the notes were given to give the company credit with the public, and thus induce individuals to insure with it. The presumption is that they were thus induced to insure. This was a sufficient consideration to sustain the contract of the makers of the notes. The notes by the contract were not payable until the avails were required by the company for the payment of losses. This did not occur six years prior to the commencement of this action. The statute of limitations did not, therefore, constitute a defense. The securities furnished by Cazeneu and Edwards to the company to enable it to comply with the statute of this State, so as to authorize the transaction of busines by it, did not discharge the makers. These securities clearly were not profits earned by the company; at most, they constituted a loan to the company. What finally became of these securities does not distinctly appear, except that they got back to the possession of Cazeneu and Edwards. The case does not show that any

portion of these securities was available for the payment of losses upon policies, but the reverse. There was no evidence that the profits of the company at any time amounted to the sum of twenty-five thousand dollars.

The judge did not err in refusing to submit this question to the jury. The defendant had no right to set off against the note the balance due him from the company on account of the six per cent per annum agreed to be paid to him by the company while the latter retained the note; such right would be in contravention of the contract of the parties. By that contract the entire principal of the note was to be available in the hands of the company for the payment of losses upon policies. If the makers had the right of set-off of demands owing them by the company, the object of giving the notes and the security of policy holders would be entirely defeated.

The judgment appealed from must be affirmed.

Judgment affirmed.