## HOPE MUTUAL INSURANCE *v.* PERKINS.

December, 1868.

Affirming 4 *Bosw.* 18.

An insurance company, as incidental to its general powers and in the absence of any positive restriction, has a right to receive a promissory

note from one of its trustees, as a part of a guaranty fund, and such note is a valid security in the hands of a receiver for the benefit of the company's creditors.

The act of the company in undertaking business in another State under an act of the legislature thereof requiring other and special security, does not exonerate the signers of such a guaranty from liability thereon, at least in respect to policies not issued in such State.

The inducement held out to the public to insure, by reason of the security afforded by the guaranty, is a sufficient consideration, or furnishes the ground for an estoppel.

The return of an execution unsatisfied and the appointment of a receiver are *prima facie* evidence of a want of assets.

On a promissory note given as a contingent guaranty, and payable according to assessments to be made after other assets are exhausted, the statute of limitations does not begin to run until that contingency occurs.

The Hope Mutual Insurance Company sued Dennis Perkins, in the New York superior court, to recover the amount of a promissory note, made by the defendant, in pursuance of an agreement entered into by defendant and others with the plaintiff.

The plaintiff was incorporated by a law of the State of Connecticut, in May, 1846. By the charter, subscriptions for policies to the amount of one hundred thousand dollars were required before organization. This provision was complied with, and the company organized and went into operation on March 15, 1847. The defendant was appointed one of the trustees of the company, and continued to act as such for some time.

At a meeting of the board of trustees, held on March 26, 1847, for the purpose of providing a sufficient fund for losses which might accrue upon policies thereafter issued, the following resolution was passed:

*Resolved,* That it is desirable to raise a guarantee fund of from fifteen thousand dollars to fifty thousand dollars, upon such securities and on such terms and conditions as are not at variance with the charter and by-laws of this company; and that the executive officers in Stamford be authorized to receive subscriptions to the same, and with the advice of the supervisory committee, to accept such as they approve of.

---

* See Sands *v.* Lilienthal, 46 *N. Y.* 541; Wheeler *v.* Warner, 47 *Id.* 519; and cases cited.

It was also resolved, that no policies should be issued until subscriptions had been obtained to that fund, and the notes, mortgages and other securities approved and actually received to the amount, with the premiums or policies really to be issued, to the sum of twenty-five thousand dollars.

At a subsequent meeting of the trustees, this sum was reduced to fifteen thousand dollars. At a still later meeting, on April 19, 1847, the defendant and others, for the purpose of creating the guarantee fund and of enabling the company to issue policies, and for the security of such as should become insured, proposed to the company to subscribe, and did subscribe, the agreement hereinafter set forth, and to contribute to the guarantee fund in the manner therein provided. This proposition was accepted, and the defendant and others severally executed and delivered to the company the following agreement:

" Whereas, it has been deemed advisable by the Hope Mutual Life Insurance Company, of Stamford, Connecticut, to create a fund for the indemnity of persons insured by said company, as a security in addition to expected profits ;

" The subscribers hereto have agreed with the said company to contribute to the said fund the amount respectively set opposite their names, by giving their promissory notes, payable in one year, upon the conditions that the same shall be held by the said company for the sole purpose of paying losses which shall accrue upon the policies assured by the said company, and shall *not be used until the other funds in the hands of said company shall have been first applied ;* that for any deficiency after the application of the said funds on account of such losses, the said notes *shall be subject to assessment for the amount required ;* that the said indemnity fund shall in no event be liable for the expenses of the said company, or claims against them, other than those arising upon policies issued by them, and in the latter case, only *after all other funds of said cowpany have been exhausted ;.* that for the loan of said notes the subscribers shall be entitled to an allowance at the rate of six per cent. per annum, so long as the said company shall hold the said security ; that *whenever a surplus of capital shall have been acquired by the company out of the profits of business, to*

*the amount of twenty-five thousand dollars, the indemnity here-in provided shall cease,* and the notes or other securities shall be returned to the subscribers respectively; it being, however, understood that the subscribers hereto may, in lieu of having such return, absorb the amount of their notes in premiums of policies on their own lives, or lives of others procured through their agency.

" To which terms and conditions the said company assent and agree to hold the said security in conformity thereto.

" STAMFORD, April 19, 1847."

In pursuance of said agreement, the defendant soon afterwards executed and delivered to the company the following note.

" $2,500. " NEW YORK, May 1, 1847.

" Twelve months after date, or sooner, if required, I promise to pay to the Hope Mutual Life Insurance Company, of Stamford, Connecticut, or order, two thousand five hundred dollars, or such assessments on the same as the trustees find it necessary to impose for the purpose of paying losses, agreeably to the terms of my subscription to the guaranty fund of said company, dated April 19, for value received.

" (Signed) DENNIS PERKINS."

The existence of this fund was announced in the newspapers, one in New York, and one in Connecticut; reported to the legislature of the State of Connecticut and advertised in pamphlets in 1847 and 1849. The defendant received a percentage on his note, and had the interest credited to him for premium on his policy.

In 1849, after the passage of an act of the legislature of this State, which is referred to in the opinions, certain persons in the city of New York, with a view of inducing the company to continue its business there, proposed to furnish an additional guarantee to the amount of one hundred thousand dollars.

Securities were furnished accordingly, and the facts in reference to this branch of the case are sufficiently stated in the opinion.

In May, 1850, the company, by its report, showed the profits

of its business to be twenty-five thousand four hundred and seventy-nine dollars and fourteen cents, which was made up as follows:

| | |
|---|---|
| Cash on hand, . . . . . | $5,813 84 |
| Premium notes, · . . · . . . | 14,149 41 |
| Due from agents, . · · · · | 5,515 89 |
| | $25,479 14 |

| | |
|---|---|
| The report also shows losses notified, part of which are awaiting proof, . . . . , . . | $11,000 |
| Less amount not recognized, . . . . . | 6,500 |
| | $4,500 |

In May, 1854, it was found that the company was *entirely insolvent; all its assets, except the guaranty fund,* having been exhausted, and there was a large outstanding indebtedness for losses and other debts. W. T. Minor was appointed by the superior court of Fairfield county, Connecticut, the receiver of the assets of the company, including the guaranty notes; and an assessment of seventy-five cents on the dollar was laid on the guaranty notes, of which the defendant received notice in December, 1854, or January, 1855.

Upon the trial, the evidence being closed, the defendant's counsel moved for a dismissal of the complaint on several grounds, and requested the court to instruct the jury upon various propositions, all of which were refused and exceptions duly taken. The points taken, and the propositions presented and decided, appear in the opinions. The judge directed a verdict for the plaintiff for three thousand one hundred and sixty nine dollars and twenty-four cents, the amount claimed, to which also the defendant excepted. The case was heard on exception at general term, a new trial denied, and defendants appealed.

*A. H. Dana*, for defendant, appellant.

*Truman Smith* and *Cephas Brainard*, for plaintiffs, respondents.

Hope Mutual Insurance v. Perkins.

MILLER, J.—It is at least exceedingly questionable, whether the note upon which this action is brought is strictly within the provisions of the act under which the plaintiff was incorporated. The eighth section of said act provides that " the company, for the better security of its dealers, may receive, during the two first years after the passage of this act, notes or other securities, for premiums in advance, of persons intending to receive its policies, and may negotiate the same for the purpose only of paying claims against it in the course of its dealings, upon such terms and conditions as may be provided by the by-laws of this corporation." The thirteenth section authorizes an allowance to persons giving notes and securities in advancee therefor of a sum not exceeding six per cent., in addition to any other profits they may be entitled to, as members of the company. The seventeenth section provides for the assessment of losses upon these persons or their legal representatives who have notes or other obligations, due by them to the company, when there is a just claim on the company for losses sustained to a greater amount than they have funds to discharge.

It is by no means clear to my mind, that the note in suit, with the accompanying stipulation, was an obligation within the spirit or meaning of the act in question, or which was contemplated by the eighth section of the plaintiff's charter. The language of the act embraces obligations given for premiums paid in advance with a view of taking out policies, and nothing beyond this, and the notes and obligations provided for were from persons who intended to take out policies, and who thereby became members of the company and were entitled to share in the profits of the business.

The note in question provides for the payment of losses, agreeably to the terms of the subscription to the guaranty fund of the company, and the agreement accompanying, and which constituted a part and portion of it, prescribes conditions which are manifestly inconsistent with the idea that it was intended to take out policies, as the provision of the eighth section contemplated. The note was not to be used until other funds of the company had been applied; the indemnity provided was to cease when the profits of the business amounted to a certain sum, and the security was to be returned to the maker. It is

true the maker had the privilege, in lieu of the return of the note and security, to absorb the amount in premiums; but it was a mere privilege, allowing him to take out policies at his option, without any obligation whatever to do so. It is quite evident that the note was given and the agreement entered into, for the purpose of providing a special guaranty fund, as a security to those who might obtain policies and for losses which might be incurred independent of the profits arising out of the ordinary course of the business of the company. At the time, this was essential to create confidence in the responsibility of the company, and thus to induce persons to take out policies. But it is very manifest that it was not the intention of the parties making the notes and signing the guaranty to take out policies, as the act provided, and hence the engagement entered into by them did not come within its provisions. Some decisions in this State are supposed to sustain the position that the note in question was in conformity with the charter; but upon examination, I think they do not uphold such a doctrine. In Desvraimes *v.* The Mechanics' Insurance Co., 1 *N. Y.* (1 *Const.*) 371, a note was given in renewal of a note previously executed, in accordance with the provisions of the twelfth section of the charter of the company, which is similar to the eighth section of the plaintiff's charter. The note was absolute on its face, and an agreement was executed in connection with, and as a part of it, which provided that it was for premiums on risks to be taken by the company, and contained other provisions, showing that polices were to be issued to the maker of the note. Policies were taken out to a certain amount. It was not denied that, to that extent, the note was valid, and it was held, that the notes being held for premiums in advance, as provided by the act, and policies having been taken out, it was valid, although premiums on insurances actually received by the maker amounted to only a part of the note.

In Brown *v.* Cooke, 4 *N. Y.* (4 *Comst.*) 51, a note was given in advance for premiums on policies of insurance, which the party agreed to take thereafter, and it was held to be valid. The defendant did not take out policies, as he had a right to do, but was bound to do so, and hence was liable, precisely the

same as if he had done so. In these cases the policies were actually taken out, or there was an obligation to do so, which no doubt could be enforced, while in the case before us, no such obligation was imposed, or actually existed, and it was entirely left to the choice of the defendant whether any policies were taken out by him.

There may be some question whether the defendant is not liable upon another principle. He was one of the trustees at the time when the resolution was passed which authorized the raising of a guaranty fund, " upon such terms and conditions as are not at variance with the charter and by-laws of the company." If the creditors were induced to give credit to the company on the strength of that resolution, passed with the acquiescence and consent of the defendant, is it not a fair presumption, as between the creditors and the defendant, that the note was given in conformity with the charter and by-laws of the company? In Ogden v. Andre, 4 Bosw. 583,* it was held, that a person who in good faith lent money to the International Insurance Company, on the transfer of its subscription notes as collateral security, without notice of any fraud affecting the origin of the notes, or that they were transferred without any previous resolution of the board of directors of such company, is entitled to recover upon them, although they may have been procured from the maker by fraud, and although there may have been no such resolution authorizing the transfer.

The case was affirmed in the court of appeals, and there appears to be no valid reason why the principle decided should not be applicable to a case like the present, if the credit was given upon the faith of the fund of which the note in question was a part. That such was the case is fairly to be inferred, I think, from the fact that the company gave notice in the most public manner, that, for the greater security of the parties insuring, an indemnity fund had been provided of twenty thousand dollars, to meet losses that might accrue upon policies issued by them, which was to remain until a capital exceeding that amount should be realized from the receipts of premiums, when it would be no longer necessary and might be withdrawn. It may also be questionable whether the resolution of

---

* See Ogden v. Raymond, in this series.

the trustees, in the passage of which the defendant participated, or of which he had knowledge, and which provided this fund, does not estop him from now averring that the note was unauthorized and in violation of the charter, as a defense to an action prosecuted for the benefit of creditors.

Passing by, however, these considerations, which have a direct bearing upon the question now presented, I think that the action is maintainable upon other and stronger grounds. The plaintiff was incorporated for the purpose of transacting the business of life insurance, and in order to carry on this business properly and successfully, it was absolutely essential to provide a fund for the payment of losses which might be incurred, before a sufficient amount could be realized by the receipt of premiums on policies issued to persons insured alone. The trustees had ample authority to procure security to policy holders for losses which might accrue, and it would have been perfectly legitimate to pledge any property which they owned for that purpose, or to procure a proper guaranty from other parties which would insure safety and security to those obtaining policies. Under these general powers, which are incident to all corporations, thus to provide for the transaction of their business, I think that the plaintiff had a right to receive the note in question as a part of a guaranty fund, and it was a valid security in the hands of a receiver for the benefit of the credititors of the company. This principle has been upheld by the highest tribunal of the State of Connecticut, in a case in which this corporation was a party.

In the Hope Mutual Life Insurance Co. *v.* Weed, 28 *Conn.* 51, an action was brought to recover the amount of a note executed as a part of the guaranty fund of the company, and it was decided, that whether the company had express authority by its charter to establish such a guaranty fund or not, yet it clearly had the power, as incidental to the general power to issue policies of insurance; that the note in question was founded on a valid consideration, not only in the commission agreed to be paid, but especially in the object for which it was given, that object being to induce persons to insure in the company, and the amount assessed being required to pay the losses for policies taken under that inducement.

The able opinion of Chief Justice STORRS. in the case cited, contains a full discussion of ths subject, and furnishes strong and satisfactory grounds for sustaining an action upon a note given under the circumstances existing in this case. Nothing can be added to the reasons stated for the conclusion arrived at in the case cited, and I concur generally with the views there expressed. As the adjudication of thehighest court of a State from whose authority the plaintiff derived its corporate powers, it is entitled to great consideration, and should not be overruled unless it be for manifest error, which I have not been able to discover.

It is insisted by the defendant's counsel, that the case cited is distinguishable from the one at bar, but I see no essential difference in the main features. It can fairly be claimed in both cases from the circumstances existing, that when the company was first organized and until the guaranty was provided, that applications for policies were not very numerous, owing mainly to the fact that a sufficient fund was not provided to meet losses which might be incurred. Nor am I able to discover, as is claimed, that the court, in the opinion delivered in the case cited, overlooked the rights of the parties who had contributed to the guaranty notes.

It is further insisted by the defendant, that even if the note and guaranty had been originally valid, it was annulled and became inoperative by the subsequent change in the condition of the company by reason of an act of the legislature of this State, passed April 10, 1849. By the act in question, it was made unlawful for any agent or agents of insurance companies to transact business in this State, unless possessed of capital or securities to the amount of one hundred thousand dollars, paid in or invested in stocks of incorporated cities, or of the State or the United States, or in bonds and mortgages on cultivated farms worth double the amount. And this was to be proved to the satisfaction of the comptroller of the State, and to be certified by him in the manner provided for by the act. *L.* 1849, p. 433, §§ 6, 7. The company had previously transacted business in New York city, and the act in question rendered it necessary to withdraw its office located there until the security was provided.

In the fall of 1849, an attempt was made to continue business under the act referred to, and the agents of the company afterwards appointed undertook to procure a guaranty to the amount required, and to obtain the certificate of the comptroller, so as to enable the company to transact business agreeably to the laws of the State. Securities were furnished by said agents, and on September 25, 1849, a report was made by the secretary of the company, duly verified, showing that it had the amount required. This was duly filed, and a certificate was obtained from the comptroller, according to the requirements of the act. The trustees of the company reserved, however, the right to require additional security, and to reject the securities furnished, as they deemed expedient, and it turned out upon investigation that they were worthless and of no value. The arrangement was then broken up, and on January 11, 1850, the securities were returned, and the business in New York was discontinued.

The position taken by the defendant's counsel is, that this attempt to continue business in New York was without his consent, and he cannot be held liable upon his guaranty for any liability accruing after that time. The answer, it seems to me, is, that there is no evidence to show that the arrangement was ever actually consummated. It was only inchoate, and the securities being unsatisfactory, was then abandoned. It was repudiated, after its fraudulent character was discovered.

But suppose the business was conducted in violation of law, in consequence of the fraud perpetrated by the agents of the plaintiff, does that fact exonerate the defendant? The principle invoked by the defendant is laid down in the H. & N. H. R. R. Co. *v.* Crosswell, 5 *Hill*, 363, that in general, if a corporation procure an alteration to be made in its charter by which a new and different business is superadded to that originally contemplated, such of the stockholders as do not assent to the alteration will be alsolved from liability on their subscriptions to the capital stock, especially if the alteration become plainly prejudicial to their interests. It can scarcely be said that the arrangement to conduct business in New York was a new or different business from that originally designed, as the same business had been conducted there prior to the act of 1849. That

act merely required proof of the responsibility of the company, and the transaction of business by reason of this provision did not add in any way to the risk of the guarantees. It was not then a change of the charter, or a different business superadded, but an effort to do business without a compliance with the law, by fraudulent practices, which were abandoned by the trustees soon after its inauguration. If the security had been valid, it would have been clearly legal, and I am not prepared to say that the principle invoked was violated, even if any additional liability had been imposed upon the defendant by the attempt to establish an agency in New York. The guaranty fund was intended to be used to secure such persons as were insured by the company in the legitimate and ordinary course of its business. This business was not necessarily limited to any particular place, or to the place where the principal office was located, but embraced such other extension of it as might be consistent with the success and prosperity of the corporation. The agency in New York, was not, in my opinion, especially prejudicial to defendant's interests, and did not particularly impair his rights.

It is also objected by the defendant, that even if the note was valid in its inception, it was afterwards annulled, according to the terms upon which it was given. These conditions were, that the note was to be returned and the indemnity to cease whenever a surplus capital should have been acquired by the company out of the profits of the business to the amount of twenty-five thousand dollars. It is claimed that the report made by the company to the legislature of the State of Connecticut on May 1, 1850, shows a net amount earned beyond the sum named, and thus the defendant was exonerated from liability It does not appear that the defendant at any time asked or demanded a return of the note, for the reason that the profits amounted to the sum named, or that the company had acquired " a surplus capital to the amount of twenty-five thousand dollars out of the profits of the business," in accordance with the condition named. As will be seen by reference to the report, the amount of twenty-five thousand four hundred and seventy-nine dollars and twenty-nine cents, reported as net proceeds consisted of several items; cash on hand; premium notes, and dues from agents. Against this, the report shows losses notified, part of

which were awaiting proof, to the amount of eleven thousand dollars less the amount not recognized, six thousand five hundred dollars, leaving four thousand five hundred dollars to be deducted for losses which were recognized. This shows a less amount of profits than the amount named in the guaranty. It is at least quite doubtful whether the premium notes are of the value stated, and it is not satisfactorily established in my opinion, that the company at this time had a surplus capital arising from the profits of the business over and above all obligations, and to the amount stated in the report. This was intended, and from the proof in the case we cannot say such was the fact.

It is also contended that the guaranty fund was to be available only after other assets were exhausted, and that it has been shown that the company were at one time possessed of a large amount of securities which they do not account for. It is apparent, I think, that there were no assets which could be applied in payment of the debts of the company. The return of an execution unsatisfied, shows that there was no property out of which a judgment against the plaintiff could be collected, and the appointment of a receiver establishes the insolvency of the corporation. These facts furnish at least *prima facie* evidence of a want of assets, and until some proof of their existence it cannot be assumed that there was property. The proof also abundantly establishes, I think, that all the funds and property except the guaranty notes had been applied and were exhausted.

The evidence as to whether a capital of twenty-five thousand dollars had been acquired by the company, and whether the plaintiff had exhausted all other assets before assessing the guaranty note, as well as the main facts involved, was uncontradicted, and there was no disputed question of fact for the jury to pass upon.

I think that the statute of limitations commenced running after the assessment was levied and the defendant was notified. By the terms of the guaranty, no assessment could be made until the other funds of the company had been disposed of in the payment of debts, and nothing was due upon the note until such assessment was actually made. See 28 *Conn.* 68. The

note, according to the conditions attached, was only payable on a contingency, not absolutely, and until that happened was not due.

There was no error committed upon the trial, and the judgment must be affirmed.

GROVER, J.—It is insisted by the counsel for the appellant that the plaintiff had no power to receive the note in suit for the purpose of creating a fund to secure the payment of losses inred upon policies issued by the company, and that the note is therefore void. The respondent cannot insist that this power is conferred by section 8 of the charter. This section authorizes the company to receive notes of parties for premiums on policies thereafter to be issued, and makes notes thus received available in the hands of the company for the payment of its liabilities, although the policies have never been issued, and no premiums been allowed thereon. This provision was necessary to prevent such notes being held without consideration. But the note in suit is not one of this class. It was not given as an advance payment of premiums upon policies thereafter to be issued. It is not, therefore, within the provisions of the eighth section of the charter, and must be held void unless it can otherwise be upheld. The note in suit was, with others, given by the makers and received by the company for the purpose of creating a guaranty fund to policy holders for the prompt payment of losses in the absence of other means of the company for that purpose, and thus giving the company credit with the public.

The question is, whether this is within the general powers of the corporation. The counsel for the appellant refers to the Revised Statutes (vol. 2, p. 660, §§ 1, 3), for the purpose of showing that it is not. The plaintiff was not incorporated by the laws of this State, but by an act of the legislature of Connecticut. It is to the laws of the latter State to which we must look to determine whether there was any restriction of the general powers of corporations imposed upon the plaintiff. No such restriction is claimed.

It is conceded that corporations, in the absence of restrictions imposed by statute, have the power necessary to enable them to transact the business authorized by their charter. The

plaintiff, by its charter, was authorized to conduct the business of life insurance. It possessed little or no available capital. It became necessary for it to acquire credit with the public. The most feasible way of doing this was to procure persons of respectability to guarantee the performance of its contracts. This, corporations may do whenever necessary. They may borrow money for the purposes of their business, and for the like purposes procure sureties, and the contracts of the latter are valid, the same as if made with individuals. The effect of the arrangement made by the plaintiff with the maker of the note in suit, and other makers of like notes, was to make the latter sureties of the company to the policy holders for the payment of losses. This was within the general powers of the plaintiff. This precise question came before the supreme court of Connecticut in a case submitted by the present plaintiff and Weed (28 *Conn.* 51), and the power of the corporation to take the note was sustained. I think the reasoning of the court in that case unanswerable. It is unnecessary to determine whether the Revised Statutes prohibit such a corporation from exercising similar powers, and I shall not discuss that point.

It is further insisted by the counsel for the appellant, that the act of 1849, of this State, prohibiting foreign corporations like the plaintiff from doing business in this State, discharged the makers of notes like the one in suit from further liability thereon. I cannot concur in this position. The makers became sureties to policy holders in effect, whenever and wherever policies were lawfully issued. Conceding that the act made it unlawful for the plaintiff to transact business in this State until it had acquired a capital of one hundred thousand dollars, as required by the act, yet this could not affect the liability of the makers upon policies lawfully issued elsewhere. Whether any policies were issued in this State in contravention of the statute does not appear. If there were, such policies were void, and the makers of the notes incurred no liability thereon.

It is further insisted that the notes were without consideration. By the contract, the plaintiff was to pay each maker respectively six per cent. per annum upon the amount of his note while retained by the company. This was a sufficient consideration for their becoming surety.

Again : the notes were given to give the company credit with the public, and thus induce individuals to insure with it. The presumption is that they were thus induced to insure. This was a sufficient consideration to sustain the contract of the makers of the notes.

The notes by the contract were not payable until the avails were required by the company for the payment of losses. This did not occur six years prior to the commencement of this action. The statute of limitations did not, therefore, constitute a defense.

The securities furnished by Cazeneu and Edwards to the company to enable it to comply with the statute of this State, so as to authorize the transaction of business by it, did not discharge the makers. These securities clearly were not profits earned by the company; at most, they constituted a loan to the company. What finally became of these securities does not distinctly appear, except that they got back to the possession of Cazeneu and Edwards. The case does not show that any portion of these securities was available for the payment of losses upon policies, but the reverse. There was no evidence that the profits of the company at any time amounted to the sum of twenty-five thousand dollars.

The judge did not err in refusing to submit this question to the jury. The defendant had no right to set off against the note the balance due him from the company on account of the six per cent. per annum agreed to be paid to him by the company while the latter retained the note; such right would be in contravention of the contract of the parties. By that contract, the entire principal of the note was to be available in the hands of the company for the payment of losses upon policies. If the makers had the right of set-off of demands owing them by the company, the object of giving the note and the security of policy holders would be entirely defeated.

The judgment appealed from must be affirmed.

All the judges concurred with MILLER, J.

Judgment affirmed, with costs.